# Supreme Court of the Navajo Nation

---

### In the Matter of Adoption of: J.L.B.
### Decided December 12, 1990

---

## OPINION

Before TSO, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

Levon B. Henry, Esq., DNA-People's Legal Services, Inc., Shiprock, Navajo Nation (New Mexico), for the Appellant; and Casey Watchman, Esq., Crownpoint, Navajo Nation (New Mexico), for the Appellee.

Opinion delivered by BLUEHOUSE, Associate Justice.

This is an appeal from an order of the Family Court for the Crownpoint Judicial District, denying a motion to reopen a decree of adoption. The natural mother of the adopted child appeals, contending that she did not consent to the adoption.

## I. FACTS

J.L.B. is a minor, born on March 23, 1988. On December 16, 1988, when he was almost nine months of age, his mother placed him in the custody of his paternal grandaunt ("adoptive mother"). The placement was made by means of a power of attorney under N.M. Stat. Ann. § 45-5-104, a portion of the New Mexico version of the Uniform Probate Code, which provides that a parent of a minor may delegate the care, custody or property of that minor to another for a period of up to six months. That statute specifically provides that the power of attorney does not include any consent to the adoption of the minor. The mother needed a family member to take care of J.L.B. so she could attend Job Corps training in Albuquerque. The power of attorney expired on June 16, 1989.

On June 7, 1989, the adoptive mother filed a petition to adopt J.L.B., alleging that the mother had made no effort to maintain a parental relationship with the child. The adoption was referred to the Eastern Navajo Agency of the Navajo Nation Division of Social Services, and its report of September 11, 1989 recommended that the adoption be denied, essentially because the child's natural parents resisted it.

On September 13, 1989, the mother signed two documents: a "parental consent for adoption of minor child," and a "relinquishment of parental rights." Both documents appear regular on their face, and they both show execution before a

New Mexico notary public. Both documents contain provisions under which the mother waived service of process for adoption as well as the right to notice of and appearance at an adoption hearing.

On December 5, 1989, the Eastern Navajo Agency of the Navajo Division of Social Services made a supplemental report to the court which rescinded the prior recommendation against adoption, and which recommended that the adoption be granted. The primary reason for the change in recommendation was that the mother had executed the consent and relinquishment of parental rights. The report shows that the Division attempted to contact the mother to confirm her consent, but was unable to do so. The social worker on the case contacted the child's paternal grandmother (i.e. the father's mother) and learned that the mother had gone to Oklahoma. The social worker left a message with the paternal grandmother, asking that the mother call. She did not call the social worker.

On December 12, 1989, the Crownpoint Family Court conducted a hearing on the adoption petition, and it entered a decree of adoption on December 22, 1989. The petition for adoption was served upon the mother on June 11, 1989, and she filed her appearance that same day. She did not appear at the adoption hearing, and she did not appeal the adoption decree.

On February 5, 1990, the mother filed a petition to reopen the adoption. That petition recited her lack of consent to the adoption, the limited effect of the power of attorney under its own terms and under N.M. Stat. Ann. § 45-5-104, and a lack of notice of the adoption hearing. The family court conducted a hearing upon that petition on April 19, 1990, limiting the scope of the hearing to the consent issue.

The family court found that the essential issue was fraud in obtaining parental consent to the adoption. The court also found that the consent and relinquishment of parental rights were read to the mother in both English and Navajo by a tribal court advocate, and that she executed both documents before a notary public. The court heard the testimony of the notary, and concluded that the documents had been regularly and properly executed before her, sustaining the regularity of both documents on their face. The court concluded that the mother had the burden of showing duress and fraudulent intent in the execution of those documents and failed to do so. The court also noted that the mother did not appeal from the December 22, 1989 judgment.

On appeal, the mother contends that the Crownpoint Family Court abused its discretion in denying the petition to reopen, that there was reversible error in limiting testimony regarding duress and fraud, and that she did not have an opportunity to offer full testimony. The dispositive issue is whether the Crownpoint Family Court abused its discretion in applying Rule 60(c) of the Navajo Rules of Civil Procedure.

## II. DISCRETION TO REOPEN A JUDGMENT

Rule 60 of the Navajo Rules of Civil Procedure provides the grounds for reopening a judgment. The parties correctly note that 9 N.T.C. § 605 provides that "[a] consent to adoption may not be withdrawn except by permission of the court given before entry of the final judgment of adoption." The mother seeks to effectively withdraw her consent to the adoption by attacking its validity, and Rule 60 provides the means for doing so.

Rule 60(c) provides many grounds for a litigant to attack a judgment. Among them are (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation or other misconduct; (4) existence of a void judgment; (5) voidability of the judgment; and (6) "any other reason justifying relief from the enforcement of the judgment."

A valid consent to an adoption is a jurisdictional requirement for an adoption under 9 N.T.C. § 603. Where a natural parent seeks relief from an adoption decree because his or her consent was obtained fraudulently, executed improperly, or it was not made knowingly and intentionally, the avenue for relief is usually Rule 60(c)(3) - intrinsic or extrinsic fraud, misrepresentation, or other adverse party misconduct.

The briefs do not clearly outline the nature of the mother's claim that she did not give true consent to the adoption, but we draw a composite picture from them and the trial transcript. In essence, the mother claims that she did not sign the relinquishment of parental rights and consent to adoption forms before a notary public, and she said that the tribal court advocate who drafted the forms, frightened her and coerced her into signing them out of fear of personal violence. She also claims that he switched documents on her.

As for the forms, the mother freely and repeatedly admitted she signed them. She admitted she speaks both Navajo and English and that she reads English. She said, in open court, that she understood the forms, and while she signed them, her real consent was only to guardianship by the adoptive mother. She denied knowing the notary public or signing the forms before her.

While there were many objections made by the counsel for the adoptive mother at the hearing, the mother had the opportunity to state that she was generally "afraid" of the tribal court advocate. The foundation for her fear was her assertion that the advocate had, at some time, bitten her mother-in-law, and she continued by saying she was afraid he would also bite her. She insisted that she signed the papers at the advocate's home office.

Interestingly, it was the mother who called the notary public as a witness. The notary public, a Bureau of Indian Affairs employee, testified that the mother came to her office and signed the consent and relinquishment documents before her. The notary public's testimony was clear, and the only conclusion the trial judge could reach was that the mother had voluntarily come before the notary public at her office and, without any coercion, signed the papers.

The court advocate was likewise quite clear in his testimony. He testified that he prepared the papers, explained them to the mother in English and in Navajo, and insisted that she go to the notary public's office to sign them and have them notarized. He stated that the mother took the papers and returned with them later. He then saw that they were signed by the mother and notarized by the notary public.

The family court judge concluded, having heard the testimony of the witnesses and having weighed their credibility, that the mother had executed her consents before a notary public, as required by 9 N.T.C. § 603. The applicable rule requires a showing of either intrinsic fraud or extrinsic fraud. The standard applied was that of "extrinsic fraud," which is as follows:

> Fraud which is collateral to the issues tried in the case where the judgment is rendered. Type of deceit which may form basis for setting aside a judgment as for example a divorce granted ex parte because the plaintiff-spouse falsely tells the court he or she is ignorant of the whereabouts of the defendant-spouse.

*Black's Law Dictionary* 595 (5th ed. 1979).

The family court drew its conclusions on the basis of the testimony before it, and a review of the transcript shows nothing which brings those conclusions into question. There was sufficient testimony, not only by the advocate who drafted the documents and the notary public, but by the mother, which supports the conclusion that she understood the consent documents and freely signed them. There is no evidence to support any allegation of threats or coercion at the time the mother signed the papers at the Bureau of Indian Affairs offices. If indeed the mother was afraid the advocate would "bite her," she could have easily refused to return them.

## III. FAIR HEARING

The mother contends that she did not receive the sort of fair hearing the law requires. She complains of the family court's limitation of the issues, the refusal to permit a witness (the grandmother the advocate is said to have bitten) to testify, and her (the mother's) inability to tell her full story.

The transcript shows that the counsel for the adoptive mother was very aggressive in making objections to evidence. He insisted that the mother confine herself to her claims that she was coerced, and he focused on the facts the mother had read, understood, and signed the documents. While one may critique the defense tactics as being overly aggressive, they were proper and the court was not misled by them. The family court insisted that the mother focus upon her claim of fraud, and such was proper under N.R.C.P. 60(c). The court's concluding remarks (at pages 35 and 36 of the transcript) show that the judge did not believe the mother because she claimed one thing and testified to another. The court concluded, and properly so, that the mother understood the documents and

signed them before a notary public without any coercion or threat.

The record shows that the court gave the mother sufficient leeway to tell her story and have her day in court. There was no objection by counsel regarding any part of the story left untold, and no offer of proof or objection was raised at the time. Counsel for the mother could have, and should have, made an offer of proof for the court to rule upon if there were any remaining assertions of fact he wished to make. As a matter of good practice, the courts should allow counsel to make reasonable offers of proof for the record if evidence is excluded or the court does not permit a line of questioning.

The mother had sufficient opportunity to raise her objections before the court after signing the papers, and an opportunity to appeal from the decree. (She admitted at the hearing that she received a copy of the final adoption decree). She had her day in court to convince the court that the adoption consent papers were obtained by fraud, and she failed to do so.

The order of the Crownpoint Family Court denying the mother's motion to reopen the adoption decree is affirmed.